## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

YAHIA KHELIFA,

        Plaintiff,

                                    Case No. 06-10147

v.                                  Hon. Gerald E. Rosen

MICHAEL CHERTOFF, ALBERTO R.
GONZALES, ROBERT S. MUELLER,
EMILIO GONZALEZ, and CAROL
JENIFER,

        Defendants.

_____/

## OPINION AND ORDER REGARDING
## DEFENDANTS' MOTION TO DISMISS OR REMAND

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on    June 9, 2006         

PRESENT:  Honorable Gerald E. Rosen
                    United States District Judge

## I. INTRODUCTION

Plaintiff Yahia Khelifa, proceeding *pro se,* commenced this action in this Court on January 10, 2006, complaining of an excessive delay in the processing of his application for naturalization by the Defendant federal government officials. Under a provision of the Immigration and Nationality Act ("INA"), if the Government fails to make a determination on such an application "before the end of the 120-day period after the date on which [a statutorily mandated] examination is conducted . . . , the applicant may apply

to the United States district court for the district in which the applicant resides for a hearing on the matter." 8 U.S.C. § 1447(b). Plaintiff alleges that this 120-day period has lapsed without a decision on his application, and he requests that the Court conduct a hearing, review his application for naturalization, and grant him a judgment declaring that he is entitled to U.S. citizenship.

By motion filed on April 3, 2006, Defendants now seek the dismissal of this action or, alternatively, a remand to the U.S. Citizenship and Immigration Services ("CIS") so that this agency may complete the processing of Plaintiff's application and determine his eligibility for citizenship. In support of this motion, Defendants first argue that the 120-day decisionmaking period has not, in fact, expired, so that this Court lacks jurisdiction to hear this case. Alternatively, even if the Court were to identify a jurisdictional basis for this action, Defendants contend that the better course would be to remand to the agency, CIS, that is charged with the responsibility to decide applications for naturalization in the first instance. Plaintiff responded to this motion on April 17, 2006, asserting that the Court has both the authority and the obligation to determine his eligibility for U.S. citizenship where, in his view, the Court has before it all of the information needed to make this determination, and where his experience with CIS to date leads him to doubt that the agency will afford him a fair hearing on his application.

Having reviewed the parties' submissions and the record as a whole, the Court finds that the relevant facts, allegations and legal arguments are adequately presented in the written record, and that oral argument would not significantly aid the decisional

2

process.  Accordingly, the Court will decide Defendants' motion "on the briefs."  <u>See</u>

Local Rule 7.1(e)(2), U.S. District Court, Eastern District of Michigan.  This opinion and

order sets forth the Court's rulings on this motion.

## II.  <u>ANALYSIS</u>

**A.      The Statutory Framework Governing This Action**

Before turning to the merits of the arguments advanced in Defendants' motion, the

Court finds it instructive to survey the statutory provisions that control the inquiry in this

case.  In order to become a naturalized U.S. citizen, an applicant must meet various

statutory requirements, including sufficient periods of residency and physical presence

and a record of "good moral character" during these periods.  8 U.S.C. § 1427(a).  In

determining whether an applicant meets these requirements, the Attorney General or his

designee is authorized to conduct both a "personal investigation" and an "examination" of

the applicant, in accordance with rules and regulations propagated by the Attorney

General to implement these statutory mandates.  <u>See</u> 8 U.S.C. §§ 1443(a), 1446(a)-(b).

Since 1998, this process also has included a criminal background check of each

applicant for naturalization.  Specifically, in a November 26, 1997 appropriations act for

the Department of Justice and other federal departments and agencies, Congress

mandated that "during fiscal year 1998 and each fiscal year thereafter, none of the funds

appropriated or otherwise made available to the Immigration and Naturalization Service

shall be used to complete adjudication of an application for naturalization unless the

Immigration and Naturalization Service has received confirmation from the Federal

Bureau of Investigation that a full criminal background check has been completed."  Pub. L. No. 105-119, Title I, 111 Stat. 2440, 2448-49 (1997).[1]  The pertinent agency regulation contemplates that this criminal background check will be completed and a "definitive response" received from the Federal Bureau of Investigation ("FBI") *before* the applicant is notified to appear for his or her "initial examination."  8 C.F.R. § 335.2(b).[2]

After conducting the examination of the applicant, the Attorney General's designee determines whether the application should be granted or denied.  8 U.S.C. § 1446(d).  If the application is denied, "the applicant may request a hearing before an immigration officer," 8 U.S.C. § 1447(a), and then may seek judicial review if the agency's decision remains unfavorable, see 8 U.S.C. § 1421(c).  As noted at the outset, if the initial decision to grant or deny an application is not made "before the end of the 120-day period after the date on which the examination is conducted," the applicant "may apply to the United States district court for the district in which the applicant resides for a

---

[1]While this act refers to the "Immigration and Naturalization Service," this agency was abolished in 2002 and its functions were transferred to a variety of agencies within the newly formed Department of Homeland Security.

[2]As explained by Jack Lin, the Assistant District Director for Adjudications at the Detroit CIS office, in a declaration offered in support of Defendants' present motion, a complete background check consists of several inquiries, including (but not necessarily limited to): (i) a check of the applicant against Homeland Security's own immigration record systems, (ii) a check of the applicant's fingerprints against the FBI's fingerprint records, (iii) a check of the "Interagency Border Inspection System" that compiles records and "watch list" information from several federal law enforcement and intelligence agencies, and (iv) a check of the applicant's name against the FBI's law enforcement records.  (See Defendants' Motion, Ex. 1, Lin Decl. at ¶ 7.)  These checks, in turn, may trigger further inquiry in cases where so-called "derogatory" information is uncovered in the initial investigation.  (See id. at ¶¶ 8-10.)

4

hearing on the matter."  8 U.S.C. § 1447(b).  In this event, the district court "may either

determine the matter or remand the matter, with appropriate instructions, to the Service to

determine the matter."  8 U.S.C. § 1447(b).

In this case, Plaintiff filed his present application for naturalization on July 3,

2003,[3] and a criminal background check was initiated shortly thereafter.  Plaintiff then

was instructed to appear for an interview at the Detroit CIS office on May 11, 2004.  At

that time, Plaintiff allegedly was told that he had satisfied most of the requirements for

citizenship, but that the agency was still awaiting the outcome of the criminal background

check.  Plaintiff repeatedly inquired over the next several months about the status of his

application, and was told each time that the application was still pending.

When over 18 months had passed since his May 11, 2004 interview without a

decision on his application, Plaintiff commenced this action on January 10, 2006,

asserting that the 120-day limit for a decision had long since expired and that he was

entitled to a judicial determination of his entitlement to U.S. citizenship.  About two

months later, on March 3, 2006, CIS received the results of Plaintiff's various background

checks.  Because this process was still ongoing when Plaintiff brought this action,

---

[3]Plaintiff filed a prior application in June of 2001, but this application was denied and
this denial was upheld upon administrative appeal.  The initial denial was based upon a
purported failure to demonstrate good moral character, where it was determined that Plaintiff's
sworn statement to the interviewing officer recounting a 1997 incident at the Detroit
Metropolitan Airport was inconsistent in certain respects with the airport security report of this
incident.  Plaintiff then requested an administrative hearing on this decision, and was successful
in securing the reversal of the adverse "good moral character" finding.  Nonetheless, the denial
of his application was affirmed on the alternative ground that he had filed his application one day
early.

Defendants argue in their present motion:  (i) that the 120-day statutory decisionmaking period had not yet begun, let alone lapsed, at the time this suit was filed, and (ii) that, in any event, the appropriate remedy at this point would be to remand to CIS so that the agency can make a prompt determination on Plaintiff's application with the benefit of a record that is now largely complete.

**B.     This Court Has Subject Matter Jurisdiction over This Case.**

As the first ground for their motion, Defendants argue that the 120-day statutory period for deciding Plaintiff's application had not yet commenced when this suit was filed on January 10, 2006.  By statute, this period begins after an "examination is conducted," 8 U.S.C. § 1447(b), and Defendants maintain that no such event can be said to have occurred until CIS has received and reviewed the results of an applicant's criminal background check.  Because the agency did not receive the results of Plaintiff's background check until March 3, 2006, nearly two months after this suit was filed, Defendants argue that there has been no violation of the 120-day statutory limit that could confer subject matter jurisdiction over this action.

As noted by Defendants, at least one court has accepted this argument.  In Danilov v. Aguirre, 370 F. Supp.2d 441 (E.D. Va. 2005), as here, the plaintiff's application for naturalization had been pending for over two years while CIS awaited the results of an FBI criminal background investigation.  The plaintiff in that case, like Plaintiff here, argued that the statutory 120-day period commenced when he was interviewed by CIS officials in January of 2004, about a year before he brought suit.  The federal government

6

defendants, in contrast, contended that this 120-day period had not yet begun, let alone expired, as of the date the plaintiff filed his action, where CIS had yet to receive the results of the plaintiff's background check.

The court agreed with the defendants that "the interview of plaintiff that occurred in January 2004 did not end the statutorily-required 'examination' and thus trigger the running of the 120 day period." Danilov, 370 F. Supp.2d at 444. In the court's view, "§ 1446(b) makes clear that an examination is not a single event, but instead is essentially a *process* the agency follows to gather information concerning the applicant." 370 F. Supp.2d at 443. This process, as the court noted, "may include the issuance of subpoenas to compel the attendance and testimony of witnesses and the production of relevant papers." 370 F. Supp.2d at 443. More significantly, Congress had "added another, very important requirement for the examination process," mandating the "completion and review of an FBI criminal background investigation of the applicant as part of the examination process." 370 F. Supp.2d at 443-44.

Because this background check is an essential part of the CIS's assessment of an application for naturalization, the court reasoned that the agency cannot fairly be said to have "conducted" an "examination" until it has received and reviewed the results of an applicant's background check. 370 F. Supp.2d at 444. In the case before the court, as here, no such results were forthcoming until after the suit was filed. Accordingly, the court found that it lacked subject matter jurisdiction, where the 120-day period had not expired — and, indeed, had not even begun — at the time the plaintiff brought his suit

challenging the prolonged processing of his application for naturalization.

Danilov's reading of the statute, however, has failed to garner the support of the other district courts that have considered this issue.  In El-Daour v. Chertoff, 417 F. Supp.2d 679, 681 (W.D. Pa. 2005), for example, the court found that Danilov's view of an examination as a "process" could not be squared with the statutory language providing that the 120-day decisionmaking period commences on **"*the date* on which the** examination is conducted."  8 U.S.C. § 1447(b) (emphasis added).  The court construed this language as "contemplat[ing] that the examination occurs on a particular, identifiable date," something that could not be said about an ongoing "process."  El-Daour, 417 F. Supp.2d at 681; see also Daami v. Gonzales, 2006 WL 1457862, at *5 (D.N.J. May 22, 2006) (observing that Danilov "stands alone" in its reading of the statute, and that "[t]he majority position is that the word 'examination' in § 1447(b) refers to the date of the examination interview with a CIS officer, and not the entire 'examination process'"); Al-Kudsi v. Gonzales, 2006 WL 752556, at *2 (D. Or. Mar. 22, 2006); Essa v. U.S. Citizenship & Immigration Services, 2005 WL 3440827, at *2 n.2 (D. Minn. Dec. 14, 2005).[4]

The pertinent CIS regulations also evidence the agency's own understanding that an "examination" is a discrete event rather than a prolonged process with multiple

_____

[4]Danilov's analysis also has been rejected in a number of unpublished decisions that have issued from this District.  See, e.g., Zhang v. Chertoff, No. 05-72121, slip op. at 2-3 (E.D. Mich. Feb. 1, 2006) (Roberts, J.); Al Saidi v. Jenifer, No. 05-71832, slip op. at 3-6 (E.D. Mich. Dec. 23, 2005) (Hood, J.); Mahmood v. Jenifer, No. 05-40154, slip op. at 2 (E.D. Mich. Nov. 30, 2005) (Gadola, J.).

components.  Most significantly, the regulation entitled "Examination of applicant"

indicates that the requisite examination consists of the applicant's "appear[ance] in person

before a Service officer designated to conduct examinations."  8 C.F.R. § 335.2(a).  This

regulation further provides (i) that "[t]he applicant may request the presence of an

attorney or representative," 8 C.F.R. § 335.2(a), (ii) that "[t]he applicant shall be

questioned, under oath or affirmation, in a setting apart from the public," with the Service

officer "maintain[ing], for the record, brief notations of the examination," 8 C.F.R. §

335.2(c), and (iii) that, "[a]t the conclusion of the examination," the Service officer is to

compile a record of all "[e]vidence received by the officer" and all "deposition[s] or

statement[s] taken by a Service officer during the initial examination or any subsequent

examination," 8 C.F.R. § 335.2(e).

Finally, and as noted earlier, this regulation provides that "[t]he Service will notify

applicants for naturalization to appear before a Service officer for initial examination on

the naturalization application *only after* the Service has received a definitive response

from the Federal Bureau of Investigation that a full criminal background check of an

applicant has been completed."  8 C.F.R. § 335.2(b) (emphasis added).  By referring

separately to the FBI background check and the "initial examination," and mandating that

the former must be completed before the latter will be conducted, this provision plainly

contemplates that the background check is independent from, as opposed to a part of, the

"examination" that is described in this agency regulation.  This provision — like the other

portions of § 335.2 cited above — is incompatible with any notion of an examination as a

process that encompasses a criminal background investigation.  See El-Daour, 417 F. Supp.2d at 683 ("Section 335.2 can only be understood as equating the "examination" with the "interview" conducted by the Service officer.").

Accordingly, the Court concurs in the weight of authority holding that the 120-day statutory decisionmaking period commences when an applicant "appear[s] in person before a Service officer" as provided in the CIS regulation that governs examinations, 8 C.F.R. § 335.2.  The required criminal background check is separate from this "examination," and the 120-day period is not tolled pending its completion.  In this case, Plaintiff's "examination" was conducted in May of 2004, and the 120-day period had long since expired when he brought this suit in January of 2006.  It follows that this Court has subject matter jurisdiction under 8 U.S.C. § 1447(b).

**C.     The Court Elects to Remand This Case for a Prompt Agency Determination on Plaintiff's Application for Naturalization.**

Having held that this matter is properly before it, the Court now must decide how to proceed.  By statute, the Court "may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter."  8 U.S.C. § 1447(b). Plaintiff argues that his application for naturalization is ripe for resolution and that the Court should review it on the merits.  Defendants, in contrast, contend that CIS should be allowed to decide Plaintiff's application in the first instance, with judicial review available in the event that Plaintiff is not satisfied with the agency's determination.  The Court finds that Defendants have the better argument on this point.

10

While the weight of authority is against Defendants' position as to subject matter jurisdiction, this same line of cases uniformly supports Defendants' contention that CIS generally should be given the opportunity to decide applications for naturalization in the first instance. In El-Daour, for example, the court stated:

> [W]hile I am confident that I have subject matter jurisdiction over El-Daour's application, I must remand the action to the CIS. Section 1447(b) permits a court to "remand the matter, with appropriate instructions, to the Service to determine the matter." Certainly, I sympathize with El-Daour's plight. He is understandably anxious to complete the naturalization process so he can fully enjoy the benefits of United States citizenship. Yet the very reason that the CIS did not process El-Daour's application within 120 days of his examination prevents me from deciding his application. The FBI has not yet completed the criminal background check. This is a vital piece of information. A court is not equipped to conduct such an investigation. I do not have the resources at my disposal to determine whether El-Daour presents a risk to national security or to public safety.

El-Daour, 417 F. Supp.2d at 683-84 (internal quotation marks and citation omitted); see also Essa, 2005 WL 3440827, at *2 (holding that the court was "unable to adjudicate [the petitioners'] application[s] for the very reason CIS has been precluded from making a final decision — the FBI background check has not been completed," and reasoning that "to adjudicate petitioners' applications at this stage would contravene Congress's intent that an FBI background check is to be completed prior to the adjudication of every naturalization application").[5]

_____

[5] Once again, the unpublished decisions from this District are largely in agreement with this weight of authority. See Zhang, No. 05-72121, slip op. at 3 ("[W]ithout the criminal background check complete, the Court is not equipped to decide the Petitioner's naturalization application."); Mahmood, No. 05-40154, slip op. at 3 ("The Court ascertains that it lacks the information to make a proper determination of Plaintiff's . . . application.").

More generally, a remand is consistent with the rule that, "[g]enerally speaking, a court . . . should remand a case to an agency for decision of a matter that statutes place primarily in agency hands." Immigration & Naturalization Service v. Ventura, 537 U.S. 12, 16, 123 S. Ct. 353, 355 (2002). The Supreme Court has cited a number of considerations in support of this "ordinary remand" rule:

> The agency can bring its expertise to bear upon the matter; it can evaluate the evidence; it can make an initial determination; and, in doing so, it can, through informed discussion and analysis, help a court later determine whether its decision exceeds the leeway that the law provides.

Ventura, 537 U.S. at 17, 123 S. Ct. at 355-56. The Court further observed that this preference for remand "has obvious importance in the immigration context." 537 U.S. at 16-17, 123 S. Ct. at 355; see also Gonzales v. Thomas, __ S. Ct. __, 2006 WL 986378, at *3 (U.S. Apr. 17, 2006) (finding, in another immigration case, that there was "no special circumstance here" that warranted a deviation from the "ordinary remand" rule).

---

In Al Saidi, however, Judge Hood initially elected not to remand the matter to CIS, citing the Government's inability to explain CIS's apparent delay in processing the plaintiff's application. See Al Saidi, No. 05-71832, slip op. at 7. Subsequently, however, the court entered a stipulated order remanding the case to CIS, citing (i) the length of time required for a federal court hearing on the matter, (ii) CIS's agreement to decide the plaintiff's naturalization application within 80 days, and (iii) the benefit to the parties and the court of "a discrete agency decision on plaintiff's naturalization petition if further review by this court was necessary." Al Saidi, No. 05-71832, Stipulation at 1 (E.D. Mich. Mar. 13, 2006).

This leaves only a single case, cited in Plaintiff's response to Defendants' motion, in which a court elected to proceed to the merits of a naturalization application. See Shalan v. Chertoff, 2006 WL 42143, at *2 (D. Mass. Jan. 6, 2006). Unfortunately, the court did not explain its grounds for selecting this course of action, stating only that "defendants offer no reasons specific to plaintiff for the extensive time expended in completing review of his application." Shalan, 2006 WL 42143, at *2.

12

In an effort to avoid a remand here, Plaintiff cites two considerations which, in his view, serve to distinguish this case from the above-cited weight of authority. First, he notes that the courts in prior cases have relied primarily on the fact that the applicant's background check had not been completed. Under these circumstances, the courts were left to choose between two undesirable courses of action: either to conduct their own investigations into an applicant's criminal background, or to proceed to the merits of the applications without the benefit of information concerning the applicants' backgrounds or security risks. Understandably, the courts have been unwilling to pursue either of these two courses, where they could instead remand with instructions for CIS to promptly decide the applications. Here, in contrast, Plaintiff notes that his criminal background check has been completed, so that the Court does not face the unpalatable prospect of conducting its own investigation or proceeding without such information.

To be sure, this is an important distinction between this case and the above-cited decisions in which the courts elected to remand to CIS for an initial determination. Yet, even with the benefit of a completed background investigation, this Court still would confront many of the concerns that the "ordinary remand" rule seeks to address. It is one matter, after all, to *review* the results of Plaintiff's background check, but another matter entirely to *interpret* these results. As explained in the declaration of CIS official Jack Lin, an applicant undergoes a number of different background checks, with each of these initial checks potentially unearthing "derogatory" information that warrants further investigation. Plainly, CIS and the federal law enforcement agencies with which it works

13

in the investigative process have a great deal more expertise than the Court in both (i) identifying the potentially problematic information that has been uncovered in a background check, and (ii) following up to determine whether this information truly reflects legitimate national security or public safety concerns, or instead is merely a "false positive."

Thus, while Plaintiff's background check is now complete, the Court still sees considerable benefit in allowing CIS to make the first assessment as to whether any information disclosed in this investigation has any bearing upon Plaintiff's eligibility for citizenship. First and foremost, CIS has the experience and expertise in making this assessment — and, more generally, in determining whether an applicant meets all of the various criteria for naturalization — while the Court has neither. Next, any subsequent judicial review — a function that *does* lie within the Court's experience and expertise — would be considerably aided by an agency analysis and explanation as to why it acted as it did on Plaintiff's application. Finally, as a practical matter, now that all barriers to a determination seemingly have been removed, CIS is just as likely as this Court to promptly decide Plaintiff's application — and, indeed, Defendants have stated their willingness and ability to make a decision within 90 to 120 days if so ordered by the Court.

Next, Plaintiff expresses his concern that CIS might take retaliatory action against him for bringing this matter before the Court, or might otherwise give his application less than the full and fair consideration it deserves. Yet, Plaintiff has not identified any basis

14

for this concern, apart from (i) his claim that CIS incorrectly determined that his prior application was filed one day too early, and (ii) the statements in Jack Lin's declaration that raise questions about certain aspects of the record compiled by CIS to date in processing Plaintiff's present application.  As to the first point, the Court declines to revisit the merits of the denial of Plaintiff's first application for naturalization, where Plaintiff evidently did not seek judicial review of this adverse decision at the time.  As to the latter, the Court reads the cited portions of this declaration as merely illustrating the sorts of follow-up inquiries that CIS wishes to conduct in light of the results of Plaintiff's background checks and the other information in Plaintiff's file.  The Court does not view Mr. Lin's declaration as a harbinger of CIS's predetermined decision to deny Plaintiff's application — and, to the extent that the Court is wrong about this, judicial review remains available to correct any such obvious abuse of agency discretion.

The Court fully acknowledges its authority under § 1447(b) to decide Plaintiff's naturalization application on the merits.  Moreover, the Court shares the widespread judicial concern and frustration that agency action on naturalization applications is unduly delayed in too many cases, including this one, by protracted FBI background checks that take months or even years to complete.  Nonetheless, under the circumstances presented here, the Court deems it more prudent to allow CIS the opportunity to determine Plaintiff's entitlement to citizenship in the first instance.  This course of action properly comports with the "ordinary remand" rule, under which the courts generally should defer to agencies that bear the statutory obligation to make the initial determination on

15

particular matters within their presumed expertise and delegated authority.  The Court

sees no basis for deviating from this general rule here, where CIS has done nothing to

date to forfeit its opportunity to decide Plaintiff's application or to delay this

decisionmaking process — rather, it has merely waited, in accordance with a

congressional mandate, for the FBI to complete its criminal background investigation of

Plaintiff.[6]  Now that this background check is complete and Plaintiff's application

otherwise appears ripe for decision, the Court remands for a prompt determination in

accordance with the assurances offered by CIS in this case.

## III.  CONCLUSION

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendants' April 3, 2006

---

[6]The only apparent fault that could be found with CIS's actions here lies in its failure to adhere to its own regulation, which, as noted earlier, calls for the FBI background check to be completed **before** an applicant is brought in for an examination.  8 C.F.R. § 335.2(b).  Perhaps in response to the growing number of lawsuits that have resulted from the combination of lengthy background checks and CIS's deviation from the course of action dictated in its regulation, the agency recently declared its renewed intention to conduct examinations only **after** receiving the results of an applicant's criminal background check, and also issued a "Fact Sheet" explaining the purposes behind and steps involved in the background check process.  See 4/25/2006 Fact Sheet, at http://www.uscis.gov/graphics/publicaffairs/factsheets/security_checks_42506.pdf.

Of course, CIS's renewed adherence to its regulation will not necessarily hasten the processing of applications for naturalization.  Here, as in other cases, the delay was attributable to a pending FBI background check, and nothing in the CIS regulation promises to alleviate this problem.  Indeed, in its recent Fact Sheet, CIS emphasizes that it will not grant a naturalization application until all required background checks are completed, no matter how long this might take.  In reaffirming its regulation, then, CIS merely limits its exposure to suit under 8 U.S.C. § 1447(b) for exceeding the 120-day decisionmaking period, by ensuring that the agency conducts examinations only after it has received all of the information, including background check results, that is necessary to determine eligibility for citizenship.

motion to dismiss or remand is GRANTED IN PART and DENIED IN PART, in

accordance with the rulings in this opinion and order.


                                   s/Gerald E. Rosen
                                   Gerald E. Rosen
                                   United States District Judge

Dated:  June 9, 2006

I hereby certify that a copy of the foregoing document was served upon counsel of record
on June 9, 2006, by electronic and/or ordinary mail.

                                   s/LaShawn R. Saulsberry
                                   Case Manager

17